The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The court will hear argument in number 20-2168, Snyder v. McDonough. Ms. Sajak, whenever you're ready. Sajak Thank you, Your Honors. Good afternoon and may it please the court. My name is Jennifer Sajak and along with my co-counsel Linda Blahue, we represent the veteran, Joseph J. Snyder Sr. in his pursuit of veteran benefits based on service connection for amyotrophic lateral sclerosis or ALS on a presumptive basis. Congress is the only entity who can decide who is a veteran, the different classes of veterans, and whether there are restrictions on what benefits the different classes can receive. Mr. Snyder is a veteran, yet the VA decided he is not eligible for a presumption that would mean everything to him and his family. While the secretary absolutely has the discretion to create a generous presumption as he has done here for ALS, he does not have the discretion to exclude classes of veterans if Congress has not done so. We are here today then for the court to answer the following questions. One, did the secretary overstep his general rulemaking authority by inserting a 90-day service requirement into 38 CFR 3.318? Two, did the secretary overstep his authority by failing to provide a rational basis for the 90-day service requirement in light of the utter lack of knowledge of what causes this disease in 90% of the population? And three, did the Veterans Court err when it held that Bowers was dispositive? Mr. Snyder? This is Judge Toronto. Can I ask you this question? Suppose that either the Institute of Medicine or Weitzkopf had a clear scientific basis for saying veterans who served less than 90 days or less show no higher rate of ALS than background population. So that it would be reasonable for the secretary when creating a presumption to exclude that class. Is your argument about the veteran character, would that argument still hold even if it was substantively reasonable to exclude the under 91 day group of veterans? We believe so, Your Honor. Because the 90-day aspect of it, and if science supported that there needed to be the 90 days, only goes to the rational basis. The fact of as far as whether he could choose 90 days or not, like the number. But whether he can make these classes at all, that goes to the general rulemaking authority to begin with. And that ability is not within Section 503C. It's just not there. And so we believe the idea of whether it's rational or not, it doesn't need to be addressed if we stop at whether it's within the general rulemaking authority. Are there other presumptions that the secretary has created that in some sense exclude some veterans, like whether they served in Vietnam for a particular period, whether they had a certain length of time at Camp Lejeune or other examples? You know probably the full list. I don't. Yes, Your Honor. And why wouldn't that encounter the same problem that you're identifying about different classes of veterans? Your Honor, all of the other presumptions that are in place, except for one, the one related to mustard gas and lewisite, all have some sort of basis in the congressional statute. Here, there's no congressional statute to make this basis on. And so those wouldn't fall because there is the basis in the law to begin with. It's not the secretary relying solely on his general rulemaking authority. Here, that's what he's doing. He's relying on the idea that the secretary can put forth the nature and extent of proof for and the evidence and trying to create what he's termed a predicate act but what Congress termed back in 1933 as the condition precedent. And when Congress changed the law in 1957, the idea of being able to give that condition precedent, saying the 90-day service or where they're located, that authority was no longer given to the executive branch. That authority was saved for Congress. Ms. Sajak, this is Judge Lind. Why isn't the secretary's discretion under Section 501 broad enough to encompass what was done here with this regulation? Your Honor, while the secretary's discretion in 501 is broad, it's not unfettered. The idea of what he relied on, that he has the authority to create the presumption itself under the nature and extent of proof and evidence, doesn't give him the authority to create these different classes of veterans. That authority was specifically taken away from him in the Veterans Benefits Act of 1957 when the idea of giving the conditions precedent and the number of days for service that was talked about in the Economy Act of 1933, that authority was taken away in the Act of 1957. And that's the precursor for Section 501A here. So at the point in time that Congress took away, and they were very distinct in the Economy Act of 1933, when it gave the secretary the ability to create the presumptions, but he did not give the secretary the ability to create classes. And so Mr. Snyder's argument is that once that authority was taken away from him, he can't kind of backdoor this new predicate theft idea into an authority that he no longer has. Are there any cases that you can cite that describe any restrictions on the power of the secretary to set limitations on a presumption? Any cases? Yes, Your Honor. There are multiple cases that have talked about the idea that it needs to be... ...the general rulemaking authority is not unfettered, that there needs to be a reasonable basis for it, and that it is still kind of caught in this idea that it needs to be within the law itself. And bear with me for one second. I'll get the case names themselves. So FTC, this is RCA Communications, which was a Supreme Court case, said that there's wide regulatory powers, but that it does not do so with unbounded discretion. That was not exactly the language that 501A has, but the idea being that while it is broad authority, it is not something that the secretary can just run with. But that case, I don't think that case stands for the proposition that the authority must be set forth in another statute. Am I wrong? No, Your Honor, it doesn't. You're not incorrect. I think the authority needs to be set out in another statute from the idea that how the secretary is coming up with what the classes are. And so if the secretary doesn't have the authority to create the classes to begin with and say that you have to have exposure by service in Vietnam or to say that you needed the 30 days to be in Camp Lejeune or here that you just needed to be a veteran, the idea that you're coming up with these classes that the only way that that has the ability to create the classes is coming from the Economy Act of 1933. I know it's a really old statute, but that's where the idea of creating these different ideas, subclasses of that you have active service and wartime service or peacetime service and how those can get further divided and where we can put veterans and create the presumptions within those classes. All of that goes back to the Economy Act of 1933 and the powers that were given at that time to the executive branch. This is Judge Chen. I just want to ask another question. I think it's somewhat connected to Judge Toronto's first question, but I just want to make sure I understand your conception of how this 1933 Act operates. If, hypothetically, there was a scientific study that proved that there's a very, very strong correlation between those veterans who had served in the Persian Gulf War and with ALS, and then as for any other veteran who did not serve in the Persian Gulf War, there's no increased possibility of ALS than the rest of the country, and the VA decides that there's enough science here to back up the idea of wanting to give this presumption to all Persian Gulf War veterans. You're saying the only way the VA could write a regulation to give that class of veterans, that group of veterans, this presumption is if it gives every veteran that presumption, even though the science shows that there's no increased risk at all for non-Persian Gulf War veterans? It sounds like I'm out of time. May I have permission to answer the question? Yes, please do. Mr. Snyder's argument is that Congress would need to make that distinction, that the Secretary's authority does not go that far to make the presumption and to make the different classes of veterans, that that only falls within Congress, and so even if the science was there to say that it's only Gulf War veterans or that it's somebody that needs to have served for 91 days, if the science was there, but Congress hasn't drafted and passed a statute that gives the different distinctions of classes for where that is, then the Secretary's authority, even though it's broad rulemaking authority, he's overstepping by putting in the different classes, however you want to create those different classes. Thank you, Your Honor. Okay, you will have your rebuttal time left, and we will hear from Mr. Beckridge. Good afternoon, Your Honors, and may it please the Court. The Court should affirm the decision of the Court of Appeals for veterans' claims because the regulation setting forth the presumption of service connection for ALS is valid, and because Mr. Snyder failed to establish the predicate facts necessary to invoke that presumption. There are two reasons that the Court should affirm the validity of Section 3.318. The first is that that regulation was promulgated in accordance with the governing statutory authority, which is found at Section 501A. And the second is that that regulation is not arbitrary and capricious because the Secretary based the regulation on the underlying science and analogous statutes and regulations. I'll address that first. Can I just, this is Judge Toronto, can I just ask, rather a lot here, maybe even almost everything comes down to this Weisskopf study, and I just want to be sure I understand it. So this is, you know, the key pages are 203, 204 of the appendix. Am I understanding things correctly? And again, Table 3 is, has been the center of most of the discussion in the briefs. This is at Appendix 204, that in the 408,000 or so of the, that were in the study, 281,000 were veterans. And then the quintiles would be, each one of those would have one-fifth of that 281,000 or about 56,000. And then the chart, and they're organized in length of time of service. And your, the Secretary's reading of that, if I understand it right, is that the length of time of service was measured in the, only in units of years, not in finer units like days or weeks or months. And hence the median figures are these nice round numbers with 21 of the 56,000 in the first quintile having died and 65 in the next, etc. Having died or at least like having ALS, I guess. I'm not quite sure which that is. Am I understanding what I'm reading here correctly? Yeah, I think you've got it exactly right. The study divided the different studies participants into these quintiles, which included two, three, four, five, and nine years. And based on those quintiles, what the study concluded was that there really wasn't a difference in the likelihood of developing ALS between a veteran in quintile one versus a veteran in quintile five. But what the study didn't look at was whether there was a minimum time necessary to be in service to see an increased likelihood of developing ALS. And the Secretary did not make anything of the difference, which is between quintile one and quintile two, which is a, you know, like a three to one difference. Is that right? That's right, Your Honor. And I think part of that is related to the difference between like, for example, quintile two and the later quintiles. Because I think actually the number of patients went down for those later quintiles as compared to quintile two. Right. But in any event, the Secretary did not make anything of the quintile one versus two difference. Right. For chenary reasons, we couldn't either. I think that's right, Your Honor. I think that what the Secretary looked at was just the fact that the study considered years of service. And that was the two years was the minimum time looked at by the study. And I think that's relevant, particularly relevant here when considering 90 days. Because 90 days is quite a bit. Just to be clear, at least in one sense, it's not quite right to say two years was the minimum time. The first 56,000, the lowest years of service group of 56,000, had a median in years of service of two. So that would include everybody down to zero. I think that's correct, Your Honor. But we have no idea how many there are down to zero or, therefore, if you refined it more finely and looked at ALS case rates for people who served at 90 days or six months or even one year, what the answer would be, Weisskopf just doesn't tell us that. That's exactly right. Let me clarify. All we have to go off of is that two years. You're right that not everybody in that first quintile necessarily served for two years. That was only the median time. But then setting the time period at 90 days, the Secretary chose a period of time that's actually much more generous to the veterans. And I think it's particularly relevant here that after the Secretary said that time, the ALS Association commented on the interim rule and said that it was appropriate, that the 90 days was an appropriate amount of time to see a likelihood or an increased likelihood of developing ALS. And I also think that 90 days is appropriate in light of the analogous statutes and regulations. Congress has endorsed the use of 90 days in 38 U.S.C. 1112. This is Judge Chen. Do we have any information as to why Congress picked 90 days in that other statute and also why the VA picked 90 days as the minimum period of time for that one-sided regulation? So the regulation was sort of the Secretary's promulgation of a regulation based on the statutes. I think the regulation was based on Congress's statute. I'm not sure where the 90 days came from on the statute, but I do think it's particularly relevant that we look at what that statute and the corresponding regulation apply to. And that's chronic diseases, and those chronic diseases are laid out in Section 3.309. I believe it's 38 CFR 3.309. The chronic diseases actually include ALS. So the Secretary, through Congress's endorsement of 90 days, has already determined that 90 days is an appropriate amount of time to warrant service connection for ALS. Now, that regulation was dealing with a period of war. The 90 days had to be during a period of war, and the onset of the disability had to take place within one year of separation from service. I think that actually furthers the reasonableness of the Secretary's action here because the 90 days doesn't have to take place during a war period, and the ALS can be developed at any time after a veteran's service. It doesn't have to be within one year of service. And for these reasons, we think that in light of the underlying evidence and in light of the analogous statutes and regulations, the Secretary's actions were reasonable, and the regulation is not arbitrary or capricious. And just to be clear, the chronic disease, I see that's defined in 3.309, but the 90-day rule appears in 3.307. Is that right? Yes, Your Honor. That's exactly right. Okay. Even though all of this would be quite, as a scientific matter, would be quite problem-specific, let's call it, disease-specific, condition-specific? Right, Your Honor. I think just the fact that ALS has been, there has been a presumption of service connection for ALS previously, and 90 days was used, and sort of, and more, with more demanding, a more demanding predicate, namely the period of war and the onset within one year of service. I think that speaks to the reasonableness of the Secretary's actions here. Turning to the statutory authority for the promulgation of the regulation. Before you do that, can I just ask, is it necessary to give Bowers any role in this analysis? It's a case that seems at least one significant step removed from what we specifically have in front of us, isn't it? So I don't think it's necessary to give Bowers. I think that the Court can certainly affirm independent of Bowers. I think the similarity with Bowers is that, like Mr. Snyder, the appellant in Bowers argued that any military service should be sufficient to obtain entitlement to the presumption of service connection for ALS. And what the Veterans Court said was that we have to apply a valid regulation as it is written. We can't rewrite that regulation. So I think Bowers would support that. If the Court found that the regulation is valid here, I think Bowers would support the determination that the Court can't simply rewrite the regulation if it was otherwise valid. Okay, go on. You were going to go back to the statutory authority question. Yes, Your Honor. And that statutory authority comes from 38 U.S.C. Section 501A, specifically Subsection 1. Congress set forth that the Secretary has authority to prescribe regulations with respect to the nature and extent of proof and evidence in order to establish the right to benefits. Here, the right to benefits is service connection for ALS, and without the regulation, a Veteran would have to prove that, not only that he or she developed ALS, but that there was an in-service occurrence of a disease or injury and that there was a causal relationship between that in-service occurrence and the development of ALS. But the Secretary changed that. What the Secretary said is that all a Veteran needs to prove is that he or she developed ALS and that the Veteran had 90 days of active and continuous service. In other words, the Secretary changed the nature and extent of proof necessary to establish a claim. This is exactly what Section 501A.1 envisions, and that's what this Court has held that a presumption does. The Court has explained that a presumption allows a claimant, such as Mr. Snyder, to establish a predicate fact, which then fills an evidentiary gap. In other words, a presumption changes the evidence needed to establish a claim. And so this regulation was promulgated in accordance with the governing statutory authority, and any argument to the contrary ignores the plain language of 501A. If the Court has no further questions, we just ask that the decision of the Veterans Court be affirmed. Okay. Thank you, Mr. Beckrich. Ms. Zajac, you have, I think, five minutes. Thank you, Your Honors. I'd like to address first the idea that in Bowers, the argument was that somebody with any military service should be good enough and that we're basically making the same argument here. Mr. Snyder wholeheartedly disagrees with that. We're not arguing that anybody with some sort of military service should be good enough. We're arguing that a veteran should receive this, and the difference between that and Mr. Bowers is that Mr. Bowers wasn't a veteran. He had National Guard service and was not injured while on active duty for training. Therefore, he never reached the veteran status, and that is why the presumption cannot apply to him. Here, Mr. Snyder is a veteran. He was injured on day 47 of his service, and he was honorably discharged. He meets all of the requirements to be a veteran and therefore should be meeting the requirements for this presumption because the secretary can't add an additional step on top of that that he doesn't have the authority to do. Number two, for the court's own information, I believe one of the judges was asking about how many veterans would seem to kind of fall into this first quintile, and TVA represents about 75 percent of the veterans that have applied for ALS for service connection, and based on the information from our service officers, we can say that there's only a couple hundred of veterans that if we took away the 90-day service requirement, that this would then be assisting, and that doesn't seem like a large number to the secretary, but for each and every one of those veterans, and again we're talking about veterans, we're talking about people that have met the statutory requirements to be considered a veteran, it would be the world to them. It also seems to me that the secretary is trying to kind of back end his way into a reasonableness argument by relying on the fact that the statute, 1-1-1-2, has put in the 90 days, and ALS is one of the diseases that then can receive the chronic presumptive service, but the problem here is that there is no statute, and we can't piggyback on what Congress found in 1,112, because that's not what the secretary relied on in creating the statute. He did try to do so by analogy, which shows to me that he knows that he can't rely on it specifically, because that's not what is coming forth here. The sole way of doing this is through the general rulemaking authority, which is not broad enough. Well, it's broad. It's not broad enough to include creating these two different types of classes. If Congress would like to do so, and then the secretary would be able to put in, then that would be a different situation, but that's not what we have here. We have a veteran who was injured in. Jack, excuse me. This is Judge Lynn. Yes. Would the secretary have authority to promulgate a presumption of ALS, regardless of the extent of service, independent of the number of days of service? Yes, Your Honor. Because that falls within the nature and extent of proof and evidence. He has the authority to create a presumption. That is within the general rulemaking authority. There's no question of that. It's whether the addition of the 90 days into, as opposing counsel stated, this idea of a predicate fact, that's what the authority is not included. But the idea of the presumption itself, we absolutely believe that the secretary has the authority and has used that authority in multiple cases. But couldn't it be argued that that is arbitrary if the only basis is the same Weisskopf study, for example? Could it be arbitrary to say that any veteran would receive it? Is that what you're asking, Your Honor? Correct. I don't think so. I think the conclusion by the Weisskopf study and the conclusion by the And if you're looking at the quintiles, I think Your Honor's pointed out, that the two years for the first quintile, that was a median. That inherently means that some of these veterans had less service. And the secretary, while he's saying the 90 days is generous, it also goes to the arbitrariness of what he's done here. Because if you're solely looking at the years of service and that's the secretary's argument, then where is he coming up with the 90 days? This idea that there is no idea what causes this disease. Excuse me. Is there any number of days that would pass muster? In other words, could the secretary have said, well, 10 days? I see that my time is up. May I answer the question, Your Honor? Yes, please do. I think the key here isn't the number of days that somebody has veteran status. And so, at this point, the study is talking about having some sort of military service. So, to directly answer your question, Your Honor, no. I don't think any number of days would have fit within this because they don't know what causes it. And putting some sort of numerical distinction assumes that there needs to be, to me, a compounding effect or some sort of exposure. And that's not what the study said. The study says that it's just military service. They don't know specifically what it was. And so, at this point in time, based on the information that's in the rulemaking, there is no reason for there to be a 90-day service requirement, nor would there be any reason to put any number on it because all that should be required is veteran status. Okay. Thank you. Thank you, Your Honor. Thank you. Thank you. Thanks to both counsel. The case is submitted. The Honorable Court is adjourned until tomorrow morning at 10 a.m.